**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KEVIN X. LU,

       *Plaintiff,*

  -against-

JUMEI INTERNATIONAL HOLDING
LIMITED,

       *Defendant.*

Civil Action No.: 1:26-cv-00082-JGK

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JUMEI INTERNATIONAL
HOLDING LIMITED'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Dated: June 5, 2026

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
Minyao Wang
140 Broadway, Suite 3100
New York, New York 10005
212-232-1300
minyao.wang@lewisbrisois.com

*Attorneys for Defendant Jumei International
Holding Limited.*

177775205.2

## TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT** ....................................................................................1

**FACTS AND PROCEDURAL HISTORY** ....................................................................5

    **I.**    **JUMEI IS A CHINESE COMPANY INCORPORATED IN THE CAYMAN ISLANDS** ...............................................................................................5

    **II.**    **MR. LU IS A SERIAL LITIGANT WHO SUES CHINESE COMPANIES IN BOTH THE UNITED STATES AND THE CAYMAN ISLANDS** ...............................................5

    **III.**    **THE MERGER AT ISSUE** ...................................................................7

    **IV.**    **MR. LU'S CLAIMS** .............................................................................7

**LEGAL STANDARD** ...................................................................................................9

**ARGUMENT** ............................................................................................................10

    **I.**    **THIS COURT SHOULD DISMISS THE COMPLAINT BASED ON THE DOCTRINE OF *FORUM NON CONVENIENS*** .......................................10

        **A.**    **Jumei Did Not Misrepresent Appraisal Right Under Cayman Law** ..........16

        **B.**    **Jumei Did Not Misrepresent the Reason for Delayed Financial Disclosure** ...........................................................................21

        **C.**    **Jumei Did Not Misrepresent the Source of Cayman Law Description** ..............................................................................25

        **D.**    **This Case Should Now Be Dismissed With Prejudice** ...........................25

**CONCLUSION** .........................................................................................................25

## TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Aenergy, S.A. v. Republic of Angola*,
   31 F.4th 119 (2d Cir. 2022) ........................................................................................12

*Aguas Lenders Recovery Grp. v. Suez, S.A.*,
   585 F.3d 696 (2d Cir. 2009).....................................................................................9, 10

*Beach v. Citigroup Alternative Invs., LLC*,
   No. 12 Civ. 7717(PKC), 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) ..............................18, 19

*Boghossian v. Capella Univ., LLC*,
   No. 24-CV-3007 (VEC), 2025 WL 934878 (S.D.N.Y. Mar. 27, 2025) ...................................16

*Born v. Quad/Graphics, Inc.*,
   521 F. Supp. 3d 469 (S.D.N.Y. 2021)...............................................................................20, 21

*Chirag v. MT Marida Marguerite Schiffahrts*,
   604 Fed. Appx. 16 (2d Cir. 2015)....................................................................................8

*City of Ouro Preto v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   751 F. Supp. 3d 356 (S.D.N.Y. 2024)...............................................................................10

*Coppelson v. Serhant*,
   No. 19-CV-8481 (LJL), 2021 WL 148088 (S.D.N.Y. Jan. 15, 2021) ...................................16

*Cosh v. Atrium Medical Corp.*,
   1:18-cv-08335, 2020 WL 583826 (S.D.N.Y. Feb. 6, 2020) ......................................................15

*Estrada v. Dugow*,
   15 Civ. 3189 (ER), 2016 WL 7017412 (S.D.N.Y. Nov. 30, 2016) ........................................17

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947)........................................................................................................12, 13

*Hahn v. Breed*,
   587 F. Supp 1369 (S.D.N.Y. 1984) ................................................................................13

*Holzman v. Guoqiang Xin*,
   No. 12-cv-8405 (AJN), 2015 WL 5544357 (S.D.N.Y. Sept. 18, 2015) .....................11, 13, 14

*Iragorri v. United Techs. Corp.*,
   274 F.3d 65 (2d Cir. 2001)...............................................................................................9

*Liana Carrier Ltd. v. Pure Biofuels Corp.*,
   151 F. Supp. 3d 319 (S.D.N.Y. 2015)...................................................................20, 22

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
   26 F. Supp. 3d 278 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015).........................16

*Martinek v. AmTrust Fin. Servs., Inc.*,
   No. 19 CIV. 8030 (KPF), 2020 WL 4735189 (S.D.N.Y. Aug. 14, 2020) ...............................21

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
   416 F.2d 146 (2d Cir. 2005)...................................................................................9

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)..................................................................................16

*Olson v. Major League Baseball*,
   29 F.4th 59 (2d Cir. 2022) ....................................................................................8

*R. Maganlal & Co. v. M.G. Chemical Co., Inc.*,
   942 F.2d 164 (2d Cir. 1991)..................................................................................12

*Star Colbert v. Dougan*,
   724 F.Supp.3d 304 (S.D.N.Y. 2024).......................................................................10

*Travelex Currency Servs., Inc. v. Puente Enters., Inc.*,
   449 F. Supp. 3d 385 (S.D.N.Y. 2020)......................................................................15

*Zamora v. Fit Int'l Grp. Corp.*,
   834 Fed. Appx 622 (2d Cir. 2020)..........................................................................15

**State Cases**

*Starr Found. v. Am. Int'l Grp.*,
   901 N.Y.S.2d 246 (1st Dep't 2011) .........................................................................19

**Statutes**

28 U.S.C. § 1782...................................................................................................5

Cayman Law ......................................................................................................19

Companies Act § 233(7) .....................................................................................2, 6

Companies Law § 238 .............................................................................2, 7, 16, 17, 23

**Court Rules**

Federal Rule of Civil Procedure 12(b)(6) ....................................................................23

Rule 12g 4(b) ....................................................................................................................21

**Other Authorities**

17 C.F.R. § 240.12g-4.......................................................................................................21

Recommendation Statement on Schedule 14D-9 ............................................................6

## **PRELIMINARY STATEMENT**

Rather than opposing the prior motion of Defendant Jumei International Holdings, Ltd. ("Jumei") to dismiss the original complaint, Plaintiff Kevin Lu ("Mr. Lu" or "Plaintiff") chose to exercise his right to amend as a matter of course and filed a first amended complaint (the "Amended Complaint"). Yet the Amended Complaint utterly fails to cure the prior fatal deficiencies identified by Jumei. If anything, the substantive amendments made by Mr. Lu further demonstrate why this litigation should be dismissed in deference to a Cayman court . First, by engaging in an extended discussion of the issue of the debatable rights of holders of American Depository Shares ("ADS") in a Cayman company, Mr. Lu provides an additional powerful reason for this Court to abstain in favor of a Cayman court. This Court does not have the expertise or the interest (and nor should it spend its finite resources) to adjudicate arcane points of Cayman corporate law. As Jumei's Cayman law expert has explained in his supplemental declaration, Mr. Lu is a party to the Deposit Agreement and has standing to raise issues thereunder in the Cayman Islands. He should be compelled to do so. Second, Mr. Lu's new assertions that Jumei's election to delay reporting of its financial results, as was permitted by applicable U.S. securities law, and that the purported source of the statement regarding Cayman law regarding the lack of appraisal right constitute separate misrepresentations are borderline frivolous. These new claims spectacularly fail under the *Twombly* and *Iqbal* line of case-law and should be immediately dispatched with as implausible.

By way of background, Mr. Lu is no stranger to this Court. He is a California resident and a *pro se* serial litigant in both the United States and the Cayman Islands against Cayman-incorporated companies based in China. In the instant action, Mr. Lu avers that he was a holder of certain ADSs of Jumei. In January 2020, the Chairman and CEO of Jumei made a successful tender

177775205.2   1

offer to acquire all publicly-held ADSs and shares in a short-form merger (the "Transaction") under Cayman law.  Mr. Lu did not object then and was duly compensated for the surrender his ADSs in Jumei.

Mr. Lu alleges, six long years (and after the five-year statute of repose for securities actions under U.S. law has passed) after he had been paid for his ADSs in connection with the transaction under its terms, that Jumei fraudulently misrepresented that (i) it would delay releasing its financial results, (ii) under Cayman law, there are no shareholder appraisal rights in short-form mergers, and (iii) the source of the Cayman law statement regarding the non-availability of appraisal rights was Harneys, Cayman counsel to Jumei. Mr. Lu claims that, had he been informed that he had a right to statutory appraisal in the short-form Transaction, he would have converted his ADSs into ordinary Jumei shares and then sought appraisal of the merger price, and that, as a result, he would have received a higher payment for his supposed shares in Jumei.

At the time of the merger consummation, in April 2020, Cayman law was at best unclear regarding appraisal rights for short-form mergers. Section 233(7) of the Companies Act of the Cayman Islands, the provision that governs short-form mergers, does not explicitly provide appraisal rights to shareholder in short form mergers when conferring that right in long-form mergers. When Jumei went through its merger in 2020, neither the Cayman courts nor the Privy Council in London had addressed this issue. And the prevailing practice in the Cayman Islands short-form mergers was that appraisal right was **not** offered to shareholders. In March 2025, almost five years after the close of the Jumei transaction, the Judicial Committee of the Privy Council in London, which acts as the court of final resort for the Caymans Islands, held that, while the *plain text* of the Companies Act does *not* give an appraisal right in short-form mergers, as a matter of

177775205.2 2

*constitutional* principle, the Act should be construed to provide such a right. Nothing in the Privy Council's decision indicated that the implicit read-in appraisal right applies retroactively.

This case is merely an attempt to repackage a Cayman corporate governance dispute as a fraud claim in a U.S. courtroom.  That should be rejected.  Mr. Lu's one-count complaint asserting fraudulent misrepresentation squarely raises legal issues on the relationship between a Cayman corporation and its shareholders, including holders of ADS shares (thereby triggering the internal affairs doctrine) ***and*** Cayman constitutional law issues. This Amended Complaint should therefore be dismissed based on *forum non conveniens*.

Mr. Lu cites to a New York forum selection clause in the Deposit Agreement.  However, that purported forum selection clause is permissive in nature. It merely permits but does not require litigation be brought in New York.  Therefore, under settled Second Circuit law, it has no impact on the *forum non conveniens* analysis which points squarely to dismissal in favor of litigation in the Cayman Islands.  When he amended his complaint, Mr. Lu attempts to engage in the finer points of Cayman corporate law regarding the distinctions between a shareholder and a holder of ADS of a Cayman company.  Yet, as Kai McGriele, an experienced and Chambers-ranked Cayman lawyer sets forth in his supplemental declaration, Mr. Lu is a party to the Deposit Agreement with a Cayman company.  Mr. Lu can indisputably bring a claim against Jumei in a Cayman Court as a party to the Deposit Agreement.  He should be compelled to do so in order to afford a Cayman court the opportunity to adjudicate relatively complicated questions of Cayman constitutional law and corporate law, including the issues of the rights of ADS holders flagged by Mr. Lu.

Further, putting aside *forum non conveniens*, the Amended Complaint fails to state a claim for fraudulent misrepresentation (under either New York law or Cayman law) because action based on advice of counsel and consistent with then prevailing Cayman practice was not fraudulent as a

177775205.2 3

matter of law.  That future events might have retroactively rendered the statement inaccurate does not aid Mr. Lu because courts uniformly reject his "fraud in hindsight" theory.   And in any event Mr. Lu fails to plausibly allege any damages resulting from the alleged fraud both because by his own admission he could not as an ADS holder automatically seek appraisal under Cayman law and, even if he could, it is too speculative for Mr. Lu to claim that he would get a higher payment from the appraisal.   As for Mr. Lu's newly-added claim regarding the reason for the delay in financial reporting, this claim is concocted from Mr. Lu's imaginary wrongs and is entirely untethered to reality. Mr. Lu's second newly-invented misrepresentation claim concerning the source of the description concerning the lack of Cayman appraisal right for the Transaction is, if anything, even more implausible under the *Twombly* and *Iqbal* standard.  The Complaint should therefore be dismissed on the merits and with prejudice.

Highly relevant to the issues discussed herein is the case *Lu v. Cheer Holding, Inc.*, which was also filed by Mr. Lu and was twice dismissed by Judge Abrams of this Court. No. 24-CV-459 (RA), 2024 WL 4149869 (S.D.N.Y. Sept. 10, 2024); 24-CV-459 (RA), 2025 WL 2371153 (S.D.N.Y. Aug. 14, 2025), Like Jumei, Cheer Holding is a China-based corporation registered in the Cayman Islands.  Cheer Holding proposed and then terminated a going private transaction similar to the transaction at issue in this instant case.  Mr. Lu's first complaint, based on Cayman law, was dismissed on *forum non conveniens* grounds because Judge Abrams concluded that it was inappropriate for a court in the U.S. to adjudicate a Cayman company dispute. *Id.* In that dismissal, Judge Abrams recommended that Mr. Lu think long and hard before filing an amended complaint. *Id.* at \*10. Ignoring that sound advice, Mr. Lu filed an amended complaint to assert new U.S. securities claims. Judge Abrams dismissed again, concluding that Mr. Lu's new claims were "***entirely*** implausible" and contrary to the plain language of Cheer Holding's public filings.  *Id.* at

177775205.2 4

*5 (S.D.N.Y. Aug. 14, 2025) (emphasis added). The Court refused to presume that Mr. Lu had a "child-like simplicity" when he reviewed regulatory filings. *Id*. at *4. This second dismissal was with prejudice because a "liberal" reading of Mr. Lu's factual allegations foreclosed any pathway to relief rendering another amendment futile. *Id*. at *6. Jumei respectfully suggests that Judge Abrams' first dismissal based on the doctrine of *forum non conveniens* should be applied to the instant case. In the alternative, the Court should dismiss based on the reasoning of Judge Abrams' second dismissal because Mr. Lu's claims herein are equally "entirely implausible."

## FACTS AND PROCEDURAL HISTORY

### I.      JUMEI IS A CHINESE COMPANY INCORPORATED IN THE CAYMAN ISLANDS

Jumei is a company incorporated in the Cayman Islands that operates multiple businesses in China, including an e-commerce business selling health and beauty products, a short video sharing business and a mobile device power bank business. Amended Complaint ¶¶ 20, 29. Jumei held an initial public offering ("IPO") on the New York Stock Exchange ("NYSE") in May of 2014 and was listed on the NYSE under the ticker symbol "JMEI" until the transaction at issue in this case. *Id*. ¶ 21.

### II.     MR. LU IS A SERIAL LITIGANT WHO SUES CHINESE COMPANIES IN BOTH THE UNITED STATES AND THE CAYMAN ISLANDS

Mr. Lu is a resident of California. Amended Complaint at ¶ 19. Mr. Lu claims that he held 19,374 ADSs. *Id.* As part of the Transaction, Plaintiff sold back all of his ADSs. *Id.* By his own admission, Mr. Lu never converted his ADS shares to ordinary shares. *Id*.  Mr. Lu asserts that as of January 2020 each ADS represented ten ordinary shares. Amended Complaint at ¶ 21.

Mr. Lu has an extensive litigation history in the Cayman Islands and the United States against Chinese-based companies. As set forth in the exhibits in the accompanying Minyao Wang Declaration, publicly available information in the Cayman Islands shows that Mr. Lu has been a

177775205.2  5

party to at least *nine* appraisal cases in the Grand Court of the Cayman Islands against companies operating in China. This number is likely an undercount, as certain appraisal litigation is not public in the Cayman Islands. Mr. Lu has admitted in other cases to dissenting from proposed mergers, but there is no public information concerning such dissent. *See* Plaintiff's Complaint in *Cheer Holding Inc.*, 2024 WL 4149869. In the United States, public records show that Mr. Lu initiated at least *three* discovery applications under 28 U.S.C. § 1782 across the country to aid his appraisal litigation in the Cayman Islands against Chinese companies.[1] Mr. Lu. has also filed cases in New York State Supreme Court, where this action was originally filed, regarding purported misconduct related to a buy-out transaction that Mr. Lu alleged deprived him of standing to derivatively sue on behalf of the company.[2] In addition, Mr. Lu has previously attempted to become a lead plaintiff in a federal-class action securities lawsuit against a Chinese issuer in the Eastern District New York.[3] Most recently, Mr. Lu unsuccessfully brought a claim against Cheer Holding, Inc. in New York State Court, which was removed to the Southern District of New York.[4] That case involved allegations of the Board Members' breach of fiduciary duty related to a proposed merger that was terminated, and was ultimately dismissed based on the doctrine of *forum non conveniens* by Judge Abrams, as already noted. Given his extensive litigation history, it is fair to characterize Mr. Lu as a professional serial litigant in both the United States and the Cayman Islands who attempts to extract nuisance settlement amounts.

---

[1] *See* Case No. 1:21mc00061 MN (D. Del.); Case No. 1:21mc00208-GBD (S.D.N.Y.); Case No. 4:21-mc-153 (E.D. Mo.).

[2] *See* Case No. 655073/2023, New York County Supreme Court.

[3] *See* Case No. 1:20-cv-06028-KAM-SJB (E.D.N.Y.) Docket No. 22.

[4] *See* Case Civil Action No. 1:24-cv-459-RA (E.D.N.Y.).

177775205.2 6

## III.    THE MERGER AT ISSUE

Jumei held an IPO on the NYSE on May 16, 2014 under the ticker symbol "JMEI" at $220 per ADS. Amended Complaint at ¶¶ 21 and 30. Jumei's Chairman and CEO Ou Chen ("Mr. Chen"), made an offer on January 12, 2020 to acquire all publicly held shares and ADSs of Jumei at $20 per ADS. *Id.* at ¶ 34. The same day, Jumei announced the formation of a Special Committee chaired by an independent director to evaluate the offer. *Id.* at ¶ 35. In connection therewith, Jumei retained Harneys as its legal counsel. *Id.*  A definitive merger agreement was signed on February 25, 2020. *Id.* at ¶ 37.

Jumei filed three separate 13E-3 Transaction Statements with the Securities and Exchange Commission on February 26, 2020, March 20, 2020, and April 9, 2020, each including a Recommendation Statement on Schedule 14D-9 "recommending the [m]erger to the Unaffiliated Security Holders." *Id.* at ¶ 40. The merger was completed on or about April 14, 2020. *Id.* at ¶ 44.

## IV.    MR. LU'S CLAIMS

Even though the Transaction was advised by sophisticated legal and financial advisors and duly approved under Cayman law, Mr. Lu asserts six years after the fact and "upon information and belief" that it was an unfair transaction. Amended Complaint ¶ 43-45.  Mr. Lu principally claims that Jumei falsely represented that individuals like Mr. Lu had no right to request an appraisal under Cayman law.  *Id*. ¶ 55-64. Mr. Lu quotes the following paragraph from the February 26, 2020 Transaction Statement filed with the SEC:

> [B]ecause the Merger is being effected pursuant to a "short-form" merger under Section 233(7) of Companies Law, the Merger does not require a shareholder vote or approval by special resolution by the Company's shareholders. The Unaffiliated Security Holders will not therefore have the opportunity to vote on the Merger. Further, the Unaffiliated Security Holders will not be entitled to the dissenters' rights available in a "long-form" merger as contemplated under section 238 of the Companies Law. Unaffiliated Security Holders will not be able to exercise any dissenters' rights under Section 238 of the Companies Law…"

*Id*. at ¶ 55. Mr. Lu alleges that the statements were "materially false because Section 238 of Cayman Law does, in fact, provide appraisal (or dissenter) rights in both long-form and short-form mergers" and that "[n]othing in the text of Section 238 of the Cayman Law supports Jumei's assertion that appraisal rights are unavailable in short-form mergers." *Id.* at ¶ 57. Mr. Lu points to the Schedule 13E-3 in a transaction related to a different company, which states that "[h]olders of ordinary shares of TEC will not be entitled to vote their Ordinary Shares of TEC with respect to the [short-form] Merger, but will be entitled to dissenters' rights in accordance with Section 238 of the Cayman Companies Law." *Id*. at ¶ 59.

In an attempt to further support his claim, Mr. Lu points to a 2021 decision of the Cayman Court ruling that shareholders have appraisal rights in short-form mergers under Section 238, which was ultimately upheld by the Privy Council of the United Kingdom in 2025. *Id.* at ¶¶ 61-62. Mr. Lu attempts to slide over in his Amended Complaint the inconvenient fact that prior to these decisions, including at the time the Transaction took place in 2020, the state of the law as to dissenters' rights in short-form mergers under Section 238 was at most unsettled and as a general matter Cayman companies undergoing a short form merger did ***not*** offer appraisal rights to shareholders. This is documented in the initial declaration signed by Kai McGriele, an experienced Cayman lawyer.

Mr. Lu further alleges that Jumei made these purported misrepresentations "with [the] intent to deceive Public Investors for the benefit of [Mr.] Chen." *Id.* at ¶ 71. He further alleges that he "read the Transaction Statements and reasonably relied on the Defendant's disclosures regarding its own governing law" *Id.* at ¶ 74. Mr. Lu further claims that had he been properly informed, he would have "convert[ed] his ADSs to ordinary shares to pursue the appraisal remedy." *Id*.

In the Amended Complaint, Mr. Lu includes the new assertion that Jumei's decision to delay financial reporting in January 2020 constitutes a misrepresentation. Amended Complaint ¶¶ 46-54. He further asserts as another misrepresentation that Jumei failed to "disclose that the erroneous legal position denying appraisal rights was not derived from independent advice provided by counsel to the Special Committee." *Id*. ¶¶ 10 and 64.

## **LEGAL STANDARD**

The Second Circuit uses a "three-step *forum non conveniens* analysis in which [the] court must first determine the degree of deference properly accorded to the plaintiffs' choice of forum; second consider whether the alternative forum proposed by the defendants is adequate to adjudicate the dispute at issue; and third, balance the private and public interests implicated in the choice of forum. *Chirag v. MT Marida Marguerite Schiffahrts*, 604 Fed. Appx. 16, 20 (2d Cir. 2015). To survive a 12(b)(6) motion to dismiss, "a complaint must plead enough facts to state a claim to relief that is plausible on its face." *Olson v. Major League Baseball*, 29 F.4th 59, 59 (2d Cir. 2022) (internal citations and quotations omitted). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Id.* In deciding a motion to dismiss, the court should construe "the complaint liberally, accepting all factual allegations therein as true, and drawing all reasonable inferences in the plaintiff's favor." *Id.* However, to survive a motion dismiss, a plaintiff must "nudge [his] claims across the line from conceivable to plausible*." Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To evaluate a motion , this court should "draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009).

## ARGUMENT

**I.     THIS COURT SHOULD DISMISS THE COMPLAINT BASED ON THE DOCTRINE OF *FORUM NON CONVENIENS***

This Court has the discretion to dismiss a case on grounds of *forum non conveniens* even if it has the requisite jurisdiction to hear it. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001). As previously stated, the Second Circuit evaluates three facts in determining whether a case should be dismissed on *forum non conveniens* grounds: (1) the amount of deference given to plaintiff's choice of forum; (2) whether an adequate alternative forum exists, and (iii) a balancing of public and private interest factors. *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.2d 146, 153 (2d Cir. 2005). These factors strongly support *forum non conveniens* dismissal in the instant case.

### A.     The Permissive Forum Selection Clause Has No Impact on *Forum Non Conveniens* Analysis

Mr. Lu alleges in his Complaint that under a Deposit Agreement Jumei submitted to the jurisdiction of New York courts with respect to disputes under that agreement. Amended Complaint ¶ 16.  However, federal law distinguishes between permissive and mandatory forum selection clauses.  A mandatory clause is a clause where parties have agreed that a dispute must be brought in the designated forum.  A permissible clause merely allows a dispute be brought in the chosen jurisdiction and does not deprive another forum that might otherwise hear the matter from accepting the litigation.  *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009).

This distinction is decisive to the *forum non conveniens* analysis.  If the selection of a forum is mandatory, then absent extraordinary instances the choice will be enforced and the standard *forum non conveniens* exercise becomes moot. On the other hand, if the forum selection provision

is permissive, then there is no presumption that the provision should be enforced and the "traditional *forum non conveniens* standards articulated by the Supreme Court" govern. *Id.*; *see also City of Ouro Preto v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 751 F. Supp. 3d 356, 375-76 (S.D.N.Y. 2024) (engaging in a traditional analysis because the forum selection provisions were not mandatory).

Section 7.07 of the Deposit Agreement, cited by Mr. Lu in his Amended Complaint and attached as Exhibit J to the Minyao Wang Declaration, does not remotely suggest that New Yorks is the only available forum or that the selection of New York is mandatory. It provides that Jumei "consents and submits to the jurisdiction of any state or federal court in the State of New York in which any such suit or proceeding may be instituted." This renders New York a permissible forum. And under Second Circuit law, this provision has no impact on the *forum non conveniens* analysis. This *forum non conveniens* assessment should be same as the one employed by Judge Abrams in *Cheer Holding*, with the same outcome: that is dismissal in favor of the Cayman legal system.

### B. Mr. Lu's Chosen Forum of New York is Owed No Deference

While there is typically "a strong presumption in favor of the plaintiff's choice of forum" the degree of deference given to such choice "moves on a sliding scale depending on several relevant considerations. *Star Colbert v. Dougan*, 724 F.Supp.3d 304, 319 (S.D.N.Y. 2024) (internal citations and quotations omitted). "Under the sliding scale, the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." *Id.* Moreover, "in the Second Circuit, deference to a plaintiff's choice of forum is diminished when the plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts." *Id.*

177775205.2  11

at 320. In other words, "if the law of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper."

Mr. Lu is a citizen of California, as set forth in Jumei's notice of removal.  He does not live or work in New York. When a non-New York plaintiff, including a plaintiff who lives elsewhere in the United States, chooses to sue in this state, his forum choice is entitled to only modest deference. *See Holzman v. Guoqiang Xin*, No. 12-cv-8405 (AJN), 2015 WL 5544357, at \*7 (S.D.N.Y. Sept. 18, 2015) (according only limited deference to an Ohio citizen's choice to sue a Cayman-incorporated Chinese Company in the Southern District of New York). The forum chosen by the Plaintiff is not convenient for the availability of witnesses or evidence, as it conducts its operations in China and is incorporated in the Cayman Islands. Moreover, Mr. Lu's choice of bringing this claim in New York appears to be motivated by forum shopping, as Mr. Lu has repeatedly invested in Chinese Companies incorporated in the Cayman Islands and has repeatedly invoked the Cayman legal process against those companies.

In *Cheer Holding*, Judge Abrams concluded that this factor counted against Mr. Lu because his claims based on a disputed merger transaction in the Cayman Islands "bear little material connection to the chosen forum."  2024 WL 4149869 at \*7. The same analysis and the same result apply here because Mr. Lu's misrepresentation claim also bears almost no connection to this country.  Like in *Cheer Holding*, here "Plaintiff may have a bona fide connection to the United States, but the lawsuit does not. Defendant is incorporated in the Cayman Islands and operates in China . . . Plaintiff does not assert any violation of United States securities laws." *Id*. at 6.  And the merger transaction at issue, like the transaction in *Cheer Holding*, was negotiated and concluded outside the United States with witnesses and other materials almost certainly located outside the United States.

177775205.2 12

**C.      The Cayman Islands is an Adequate Alternative Forum to Adjudicate the Issues Present in this Case.**

"An alternative forum is adequate [1] if the defendants are amenable to service of process there, and [2] if it permits litigation of the subject matter of the dispute." *Aenergy, S.A. v. Republic of Angola*, 31 F.4th 119, 130 (2d Cir. 2022). There can be no dispute that the Cayman Islands is an adequate forum. It is a globally prominent offshore financial center under the control of the United Kingdom and follows the common-law system. Jumei, a company which is organized in the Cayman Islands is unquestionably subject to service of process there.  *Cheer Holding*, 2024 WL 4149869, at *7 (the Cayman Islands was an adequate alternative forum for Mr. Lu).  In the Amended Complaint, Mr. Lu claims that because he held ADS shares as opposed to regular shares of Jumei, he lacked certain rights under Cayman corporate law.  *See* Amended Complaint ¶¶ 23-28. This transparent attempt to negate the Cayman Islands as an adequate forum backfires on Mr. Lu.  As Mr. Kai McGriele cogently states in his supplemental declaration:  "In such circumstances, the ADS holder ordinarily possesses contractual rights arising under the applicable deposit agreement but is not itself treated as the registered shareholder of the Cayman Islands company. To the extent that he asserts his rights as a contractual party, he may do so under Cayman law." *See* Supplemental McGriele Declaration,  ¶ 12.  Mr. Lu can pursue his case in the Cayman Islands.

**D.      The Balance of Public and Private Interests Weighs in Favor of Dismissal**

The Supreme Court set forth the public and private interest factors to be considered in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947). The public interest factors to be considered "include administrative difficulties stemming from court congestion, the interest in having 'localized controversies decided at home'; and the interest in having issues of foreign law decided by a foreign tribunal." *R. Maganlal & Co. v. M.G. Chemical Co., Inc.*, 942 F.2d 164, 168 (2d Cir.

1991) (quoting *Gilbert*, 330 U.S. at 508-59). This Court has previously determined that, in the case of a Chinese company incorporated in the Cayman Islands, the last "two factors strongly support a finding of *forum non conveniens*" because the Cayman Islands has a unique and compelling interest in determining the "relationships among or between the corporation and its current officers, directors, and shareholders" of a company organized under its own laws. *Holzman* 2015 WL 5544357, at *23. Judge Abrams came to the same decision regarding Mr. Lu in *Cheer Holding. See* 2024 WL 4149869, at *10. This is especially true in the instant case, as Mr. Lu's misrepresentation claim is premised on matters of Cayman constitutional law and Cayman corporate law regarding dissenter rights in short-form mergers and what rights an ADS holder has under Cayman law as opposed to an ordinary shareholder.[5] Cayman courts undoubtedly have an exceptionally strong interest, not to mention the built-in expertise, to decide such controversies.

New York, by contrast, has no interest in adjudicating a matter underpinned by foreign constitutional principles and foreign corporate law principles brought by a California resident against a foreign defendant. This would be an imprudent expenditure of limited New York judicial resources to decide a case that "principally involves a Cayman Islands corporation, headquartered in China, and a fraudulent transaction allegedly perpetrated by defendants in China." *See Holzman* 2015 WL 5544357 at *24-25; *see also Cheer Holding, Inc.*, 2024 WL 4149869, at *10. In his Amended Complaint, Mr. Lu voluntarily interjects the issue of the distinctions between an ADS holder and a regular shareholder. This is yet another unique Cayman corporate law issue that does not belong to this Court. This further reinforces the public interest analysis pointing to dismissal

---

[5] Mr. Lu's claim of three misrepresentations triggers the internal affairs doctrine and requires the application of Cayman corporate law. *Hahn v. Breed*, 587 F. Supp 1369, 1381 (S.D.N.Y. 1984) (claim that "raises the issue of the fairness of [a] merger to a shareholder ... involves the internal affairs of a [] corporation").

177775205.2 14

in favor of a Cayman courtroom. As Mr. McGriele stated in paragraph 12 of his supplemental declaration, Mr. Lu *can* bring a case in the Cayman Islands under the Deposit Agreement. There is no reason for this Court to expend its finite resources to decide what rights and responsibilities an ADS holder has under Cayman law, in addition to other difficult Cayman law questions.

Private interest factors include "'the ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining the attendance of willing, witnesses…and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Holzman* 2015 WL 5544357, at *24-25. Importantly, Jumei is a Chinese company incorporated in the Cayman Islands. *See* Declaration of Shaonan Zhou, ¶ 3. Jumei is not registered to do business in the State of New York or anywhere is the United States. *Id.* at ¶ 4. Jumei's business records are located in China and the Cayman Islands, and it does not maintain any business records in the United States. *Id.* at ¶ 8. In analyzing these same facts, the *Cheer Holding, Inc.* Court held that the private interest factors weighed in favor of dismissal. *Cheer Holding Inc.*, 2024 WL 4149869, at *8. Moreover, trial in the Cayman Islands, would be far shorter, more straightforward, and less expensive because a Cayman judge is qualified to interpret Cayman law which govern this litigation. On the other hand, this Court would have to rely on competing foreign law declarations to ascertain Cayman law, posing a significant risk of unnecessarily prolonging the legal process. *See Holzman*, 2015 WL 5544357 at *21. Thus, both public and private interest factors strongly weigh in favor of dismissal.

Indeed, if Mr. Lu is so determined to have this matter heard in New York and is so determined to avoid the Cayman Islands, he can, consistent with section 23 of the Deposit Agreement, commence ***an arbitration*** in New York. That provision states that such an arbitration is to be commenced at the discretion of the claimant, that is Mr. Lu. Given that Mr. Lu can have

177775205.2  15

his claim decided in New York by invoking this provision which does not add unnecessary burdens on the courts, there is yet another reason to follow Judge Abrams' instructions in *Cheer Holding* that there is "no compelling reason why the law and judicial resources of this forum should be applied to resolve this dispute, nor any overriding American policy interest that would be promoted or enforced by doing so."  2024 WL 4149869, at *10.

## II.    ALTERNATIVELY, THIS COURT SHOULD DISMISS THE COMPLAINT FOR A FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED

To successfully state a claim for fraudulent misrepresentation under New York law, "a plaintiff must demonstrate: (1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance." *Zamora v. Fit Int'l Grp. Corp.*, 834 Fed. Appx 622, 626 (2d Cir. 2020). Mr. Lu cannot plausibly allege the first, second and fourth elements. That is fatal.

If the Court applies Cayman law, the necessary elements for fraudulent misrepresentation are  (A) a false statement of fact made by the defendant to the claimant; (B) knowledge that the statement was false or recklessness as to its truth or negligence as to its accuracy, depending on the nature of the claim; (C) an intention that the claimant should rely on the statement; (D) actual and reasonable reliance by the claimant; and (e) loss or damage suffered by the claimant as a result of that reliance.  First McGriele Declaration ¶ 15.  As Mr. McGriele explains, Mr. Lu's claim fails at least with respect the first and last elements, dooming his case.  *Id.* ¶¶ 15-20.

### A.    Jumei Did Not Misrepresent Appraisal Right Under Cayman Law

#### 1.    Jumei's Statement Was Not False When Made.

A fraudulent statement is one that was "falsely made, or caused to be made with the intent to deceive." *Cosh v. Atrium Medical Corp.*,1:18-cv-08335 (ALC), 2020 WL 583826, at *4

(S.D.N.Y. Feb. 6, 2020) (internal quotations and citations omitted). An alleged misrepresentation must be "false at the time that it was made." *Travelex Currency Servs., Inc. v. Puente Enters., Inc.*, 449 F. Supp. 3d 385, 397 (S.D.N.Y. 2020). A statement does not become false by virtue of later events. As one judge of this District recently held, "Plaintiffs have not cleared the first hurdle of demonstrating that such statements were materially false when they were made. Plaintiffs' allegations are nothing more than 'fraud by hindsight,' which is not permitted." *Boghossian v. Capella Univ., LLC*, No. 24-CV-3007 (VEC), 2025 WL 934878, at *7 (S.D.N.Y. Mar. 27, 2025). Simply put, "[a] statement that was believed to be true when made, but was later shown to be false, is insufficient; there is no actionable falsity in such a circumstance. Put another way, without contemporaneous falsity, there can be no fraud." *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 290 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015); *see also Coppelson v. Serhant*, No. 19-CV-8481 (LJL), 2021 WL 148088, at *8 (S.D.N.Y. Jan. 15, 2021) (dismissing complaint based on Second Circuit rule that "We have refused to allow plaintiffs to proceed with allegations of 'fraud by hindsight'") (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)).

Mr. Lu's Complaint alleges that Jumei "unequivocally stated that Cayman law does not permit appraisal rights in short-form mergers and, accordingly, that Public Investors had no opportunity to pursue appraisal remedy" and that "this representation was materially false because statutory appraisal rights are, in fact, available." Amended Complaint ¶ 9. In alleging falsity, Mr. Lu states that "[n]othing in the text of Section 238 of the Cayman Law supports Jumei's assertion that appraisal rights are unavailable in short-form mergers." *Id.* at ¶ 57. He relies on the Schedule 13E-3 from a separate transaction to support his contention that the statement was false. He further points to a ruling by the Cayman Court in 2021 and the Privy Council in 2025, one year and five

177775205.2 17

years respectively after the finalization of the Jumei transaction, in which the courts determined as that dissenting appraisal rights applied in short-form mergers. *Id.* at ¶¶ 59-64.

This is classic "fraud by hindsight" that courts routinely reject as a basis for a viable misrepresentation claim. What Mr. Lu fails to explain in the Amended Complaint and as Mr. McGriele has cogently set forth in his first declaration is that, prior to the future decisions Mr. Lu now relies, the application of Section 238 to short-form mergers was at most unsettled because there was no on-point court decision. Indeed, Mr. McGriele has opined that at the time of the Jumei transaction, the prevailing practice was that appraisal right was ***not*** available to shareholders in short form mergers. This is unsurprisingly because the *plain text* of the Companies Act of the Cayman Islands does not explicitly give appraisal right to shareholders in a short-form merger. When Jumei went through its transaction in 2020, there was no judicial decision holding to the contrary and multiple short-form mergers were consummated *without* offering appraisal rights. It was not until the end of 2025, more than five years after the close of the Jumei transaction, that the Privy Council in London, the highest court having jurisdiction over the Cayman Islands, held that, as a matter of *constitutional* principle, Section 238 should be read to provide an implicit right of appraisal in short form mergers. Indeed, the Privy Council confirmed that as a matter of statutory construction, there was no right to appraisal in a short form merger. Mr. Lu cannot make a fraud case based on a court decision premised on constitutional principles that was decided five years after the closing of the transaction at issue. Jumei's statement was not false when it was made in 2020 and that is the end of the inquiry. Try as he may, Mr. Lu cannot overcome this defect.

### 2.    Mr. Lu Cannot Prove Intent To Defraud.

Mr. Lu also cannot plausibly allege an intent to defraud. He alleges, with no factual plausible support and nothing more than implausible bluster, that Jumei made its

177775205.2  18

misrepresentations with the intent to deceive investors. Amended Complaint. *Id.* at ¶ 71. But an "intent to deceive must be shown by evidence of 'guilty knowledge or willful ignorance.'" *Estrada v. Dugow*, 15 Civ. 3189 (ER), 2016 WL 7017412, at *10 (S.D.N.Y. Nov. 30, 2016). Cayman law requires a similar finding of "deliberate dishonesty and conscious intent to deceive." First Declaration of Kai McGriele, ¶ 15-16. Given the state of the law in 2020, when the statements were made, and based on the prevailing practice of other companies undergoing a short-form merger at the time, Jumei's statements were not false. A statement made in the context of unsettled law, particularly one made in reliance on legal advice, and in conformality with prevailing practices, cannot plausibly support an inference of fraudulent intent or deliberate dishonesty. Therefore, Jumei did not act upon guilty knowledge or willful ignorance, and could not have had the intent to deceive, as it acted upon the state of the law as it reasonably understood it at the time and based on the advice of counsel and consistent with prevailing practices.

### 3. Plaintiff's Allegations that He Would Have Received Higher Payments Are Too Speculative

The Amended Complaint asserts that had Mr. Lu been able to assert his appraisal rights he would have received a much higher payment. *Id.* at ¶¶ 97-99. But it is axiomatic that the law does not permit a claim based on speculative assertions of damages.  Mr. Lu cannot show that an exercise of his purported appraisal rights would have yielded a higher value in a manner that he is required to in order to survive a motion to dismiss.

As an initial matter, by his own admission, Mr. Lu, as a ADS holder, could not have automatically pursued appraisal rights as a matter of Cayman law.  And Mr. McGriele concurs with this assessment.  Supplemental McGriele Declaration, ¶¶ 13-16.  Accordingly, it is simply a matter of wild speculation and conjecture  that Mr. Lu was willing to or could have completed the

legal steps necessary to exercise his right to statutory appraisal in time.  This, by itself, would have taken Mr. Lu's claim into the realm of impermissible speculation, requiring its dismissal.

Putting this aside, even if he could have invoked the appraisal process in time, Mr. Lu's claimed damages are analogous to a "holder claim" where a plaintiff seeks damages "based on the value that would have been realized in a hypothetical sale." *Beach v. Citigroup Alternative Invs., LLC*, No. 12 Civ. 7717(PKC), 2014 WL 904650, at \*16 (S.D.N.Y. Mar. 7, 2014). In *Beach*, this Court held that a plaintiff must show *actual damages* to sustain a claim for fraudulent misrepresentation. *Id.* at \*17 (citing *Starr Found. v. Am. Int'l Grp.*, 901 N.Y.S.2d 246, 257 (1st Dep't 2011)). Mr. Lu's complaint makes no allegations, let alone plausible allegations, to support the fact that he would have received more money for his ADRs had he exercised appraisal rights. Appraisal litigation can be lengthy, expensive and requires extensive expert testimony. The outcome is at best uncertain. Damages based on hypothetical appraisal outcomes are inherently speculative. Mr. Lu's assertions in the Amended Complaint are nothing more than (i) the valuation of Jumei was higher years ago, before the start of a global pandemic, and (ii) Jumei's management must be hiding something.  Mr. Lu is basically telling the court:  Trust me that I could have done better. This is grossly too deficient to take a complaint beyond the initial pleading stage. Without supporting facts that pass the plausibility test, the assertion that Mr. Lu would have received more money had he jumped through the procedural hoops and successfully sought appraisal rights (which by his own admission he did not have the automatic right to) is a mere conclusory and speculatory allegation attempting to predict the future that is legally impermissible for damages purposes. It cannot by any stretch of the imagination survive a motion to dismiss.

### 4. Application of Cayman Law Would Dictate the Same Outcome

If this Court is inclined to apply Cayman law, it should likely dismiss the Amended Complaint for substantially the same reason. As Mr. McGriele explains, a statement is not false under Cayman law when it was consistent with prevailing corporate practice for short form mergers at the time and was based on advice from counsel. First McGriele Declaration, ¶¶ 16-19.

Likewise, Cayman law does not permit a case to go forward based on a plaintiff's speculative theory of a potential loss. *Id*. ¶ 20. Here, as discussed, Mr. Lu has not plausibly established how he would have done better had he been able to exercise his appraisal rights. And given the unpredictable nature of appraisal litigation, he simply cannot do so.

### B. Jumei Did Not Misrepresent the Reason for Delayed Financial Disclosure

Mr. Lu's allegations in paragraphs 45 through 54 fail to plead any actionable misrepresentation. To state an actionable claim, Mr. Lu must allege a materially false or misleading statement. He simply fails to do so. The substantive part of the statement at issue reads as follow: "[Jumei], a fashion and lifestyle solutions provider in China, today announced that it will delay the release of its financial results for the six months ended June 30, 2019. The Form 6-K containing semi-annual financial information could not be filed within the time period specified by the New York Stock Exchange because certain operational results associated with Jumei's new businesses cannot be provided on a U.S. GAAP basis without significant effort or expense." *See* Exhibit K, Wang Declaration.

Mr. Lu's claim is boiled down to this: because Jumei invoked a routine legal provision to delay publishing its financial results, it must be up to no good even though he has no plausible fact to support his wild suspicions. To mask his lack of plausible facts, Mr. Lu concocts out of thin air a "scheme" to defraud and attributes without a scintillate of plausible support various ill motives

177775205.2 21

to Jumei and its management.  *See*, *e.g.,* Amended Complaint, 65-70. This wild and overly imaginative concoction by Mr. Lu falls far short of the plausibility pleading standard demanded by the federal courts.  It fails the test under Rule 8, let alone the test under Rule 9.

Plaintiff principally invokes Jumei's announcement that it would delay releasing financial results—which was something Jumei had the right to do under applicable rules and was not a false or misleading statement in connection with the Transaction. The statement did not solicit shareholder action, did not relate to the merger consideration, and did not affect the mechanics of the Transaction. It was, at most, an incidental corporate disclosure. Courts routinely reject fraud claims based on such collateral statements.  That inevitable conclusion is reinforced by the context in which the statement was made. The alleged misstatement was not contained in any merger related disclosure document—such as a proxy statement or tender offer. Conversely, the operative disclosures concerning the transaction were made in formal filings, including the tender offer materials, which set forth in detail the structure, valuation, and mechanics of the transaction. Those Schedule 13E-3 filings expressly disclosed how the transaction valuation was calculated, including the number of shares, option exercises, and per share consideration.

The reasoning of *Liana Carrier Ltd. v. Pure Biofuels Corp.* is directly on point. In that case, this Court dismissed misrepresentation claims in public filings concerned matters separate from the merger and did not cause or influence the plaintiffs' forced sale of securities. *See Liana Carrier Ltd. v. Pure Biofuels Corp.*, 151 F. Supp. 3d 319, 327 (S.D.N.Y. 2015), *aff'd as modified*, 672 F. App'x 85 (2d Cir. 2016). This court emphasized that statements are not actionable where they are not causally linked to the transaction at issue and do not affect shareholders' ability to act. *See id*. Similarly, in *Born v. Quad/Graphics, Inc.,* plaintiffs challenged generalized corporate statements about a company's business strategy, financial outlook, and a proposed transaction,

arguing that those statements were misleading in light of undisclosed internal difficulties and subsequent negative outcomes. *See Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 489 (S.D.N.Y. 2021). The court dismissed the claims, holding that plaintiffs failed to allege particularized facts showing that the statements were false when made or that defendants possessed contrary information at the time. *See id.* The court emphasized that allegations based on missed projections, changes in plans, or abandoned transactions amount to impermissible hindsight, not securities fraud. *See id*.

The same is true here. The alleged statement about delaying financial results is wholly divorced from the merger disclosures and therefore lacks both materiality and transaction causation.

By contrast, the circumstances here are in stark contrast from *Martinek v. AmTrust Financial Services, Inc.*, where the court found potentially actionable misstatements in merger related and offering documents that directly addressed the continuing listing and characteristics of the securities being purchased. *See Martinek v. AmTrust Fin. Servs., Inc.*, No. 19 CIV. 8030 (KPF), 2020 WL 4735189, at *12 (S.D.N.Y. Aug. 14, 2020). In *Martinek*, the defendants made specific, repeated representations in formal disclosure documents that plausibly shaped investor expectations regarding the securities themselves. *See id*.

Here, Plaintiff identifies no comparable misrepresentation in any operative merger disclosure. Rather, Mr. Lu relies on a generalized and highly self-serving conjecture about financial reporting's timing—precisely the type of statement that courts have found insufficient to support a securities fraud claim.

Plaintiff's highly speculative theory also fails because it disregards the legal effect of Jumei's decision to delay the release of its earnings release. Public companies delay such releases

routinely and for a variety of legitimate reasons. A company does not open itself to a fraud claim by delaying its financial result based on nothing more than a disgruntled person's imagined wrongdoing.

Finally, Mr. Lu does not plausibly plead materiality or causation. A statement is material only if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision, including whether to vote or tender shares. *See Liana Carrier Ltd.*, 151 F. Supp. 3d at 328  ("An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.")

Mr. Lu does not plausibly allege that Jumei's routine public SEC filing misled shareholders to authorize the merger transaction. Instead, Mr. Lu relies on a financial reporting announcement as the basis for its misrepresentation claim. Moreover, Mr. Lu does not plausibly allege that shareholders could have taken any different action had additional financial information been disclosed. As *in Liana Carrier Ltd.*, where the court found no causal link between alleged misstatements and the merger outcome, Plaintiff's theory here fails to establish either transaction causation or loss causation. *See id*. ("The causal link between the nondisclosures alleged in the SEC filings and the Merger is too attenuated to satisfy the transaction causation requirement of Section 10(b).").

In sum, the newly-minted allegations in paragraphs 45 through 54 do not identify any materially false or misleading statement, do not bear the required connection to the merger transaction, and do not implicate any duty to disclose in light of Jumei's legitimate exercise of a right to delay the release of its financial results. Such implausible allegations are insufficient as a matter of law and do not pass the common sense test, and this fraud claim must be dismissed.

177775205.2 24

### C.    Jumei Did Not Misrepresent the Source of Cayman Law Description

Mr. Lu, in a desperate gambit to save his complaint, also makes the wild assertion that Jumei's legal position that there was no appraisal right under Cayman law for the Transaction came from counsel to Mr. Chen, not counsel to the Special Committee.  Yes the statements at issue, which Mr. Lu quotes at length in his own Amended Complaint, do not state where the source of the legal description came from.  *See* Amended Complaint, 55 and 56. This claim fails on this basis alone.  And moreover, as already discussed, the position articulated by Jumei that there was no right to appraisal for a short-form merger was the generally accepted position in the Cayman business and legal community.  This "misrepresentation" once again falls dramatically short of the plausibility test. Mr. Lu's last-minute invention of this second misrepresentation claim falls flat.

### D.    This Case Should Now Be Dismissed With Prejudice

This is Mr. Lu's second complaint against Jumei.  Given the current complaint's complete and fatal lack of merit, the extortionate nature of the case, and Mr. Lu's extensive litigation history in both the United States and the Cayman Islands, no further amendment should be permitted.  To quote Judge Abrams again, "the problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it."  2025 WL 2371153 at *6.  Mr. Lu is already desperately grasping at straws for his first amended complaint.  He cannot continue on this futile exercise.

### CONCLUSION

Because this case rests solely on the interpretation of Cayman law, including the state of Section 238 of Cayman Companies law in January 2020, the understanding of subsequent decisions by the Cayman courts and the Privy Council of the United Kingdom, and the rights of ADS holders under Cayman law, this case should be dismissed pursuant to the doctrine of *forum non conveniens*. Alternatively, the Complaint should be dismissed for failure to state a claim.

177775205.2 25

Dated: New York, NY
      June 5, 2026

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By:        /s/ Minyao Wang
           Minyao Wang
           140 Broadway, Suite 3100
           New York, New York 10005
           Minyao.Wang@lewisbrisbois.com
           212-232-1300

           *Attorneys for Defendant Jumei*
           *International Holding Limited.*